# Law Offices of
# James F. Sullivan, P.C.

52 Duane Street, 7th Floor
New York, New York 10007
Tel (212) 374-0009
Fax (212) 374-9931

September 21, 2018

**VIA ECF**

Hon. Edward R. Korman
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    **Santos Vicente Cuxulic, et al v. M&A Projects Inc and Bogdan Malinowski**
           **Case No. 18-cv-2621(ERK) (PK)**

Dear Judge Korman:

    Plaintiff, Santos Vicente Cuxulic ("Plaintiff"), and Defendants, M&A Projects Inc and Bogdan Malinowski ("Defendants") jointly request that Your Honor approve the settlement reached in this matter. A copy of the executed settlement agreement is annexed herein as Exhibit "1."

## BACKGROUND

    Plaintiff filed a Complaint on May 3, 2018, asserting that Defendant violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by failing to pay overtime rate for all hours worked over forty (40) in a work week, failing to provide a wage notice pursuant to §195(1) of the NYLL, and failing to provide accurate wage statements pursuant to §195(3). The Plaintiff and Defendants have reached a settlement among the parties and now request the Courts approval of same.

## CLAIMS AND DEFENSES

    Plaintiff was a mason employed by Defendants. Plaintiff filed a complaint, alleging that Defendants failed to pay him in accordance under the FLSA, 29 U.S.C. §§ 201 *et seq.* and the NYLL. Further, Plaintiff also sought statutory damages based on Defendant' alleged failure to provide certain wage notices and earning statements that are required under the portion of the NYLL referred to as the Wage Theft Prevention Act.

    There are a number of contested factual issues in this case. Plaintiff claims that he was not compensated the overtime rate for all hours worked over forty (40) hours in a work week. Further, Plaintiff claims he worked an average of 51 hours per week from December 2014 to January 2018.

1

In contrast, Defendants dispute the amount of average number of hours Plaintiff worked. Defendant claims Plaintiff worked at most 46 hours per week. Further, Defendants' records show that Plaintiff was employed by Defendant from January 2015 to January 2018. Thus, Defendant disputes the amount of hours worked by Plaintiff and Plaintiff's overtime calculation. Although Defendant believes it has meritorious defenses to Plaintiff's claim, Defendants have agreed to settle this action to avoid the costs associated with litigation.

## SETTLEMENT AMOUNT

Plaintiff claims that he was not compensated at the overtime rate for all hours worked over forty (40) in a work week while in the employ of the Defendants. Specifically, Plaintiff alleges the following:

For the period of December 2014 to January 2018, Plaintiff worked fifty-one (51) hours a week. Plaintiff was paid between $17.00 and $25.00 per hour and received a weekly compensation at his hourly rate for all hours worked. Plaintiff alleges that Defendant failed to pay the overtime premium for all hours worked over forty (40) hours in a work week.

Therefore, Plaintiff's best case award would be $45,238.50 representing the recovery of $17,619.25 in unpaid wages, imposition of a one hundred percent (100%) penalty totaling $17,619.25 pursuant to FLSA and NYLL, and $10,000.00 for violations of the Wage Theft Prevention Act.

However, Plaintiff recognizes that the damages owed can decrease based on Defendant's proof of hours worked. Specifically, should the records of the Defendant be accepted, Plaintiff's best case award would be $28,813.00, representing the recovery of $9,406.50 in unpaid wages, imposition of a one hundred percent (100%) penalty totaling $9,406.50 pursuant to FLSA and NYLL, and $10,000.00 for violations of the Wage Theft Prevention Act.

Thus, a settlement of $30,000.00–which wholly compensates Plaintiff for wages owed, as alleged by the Plaintiff–is a fair and reasonable settlement resulting from an arm's-length negotiation between experienced counsel.

## ATTORNEY FEES

In accordance with retainer agreement between the Plaintiff and Plaintiff's counsel called for legal services to be performed on a contingency basis. Pursuant to the retainer agreement, Plaintiff's counsel is to receive one third of any recovery and be reimbursed for all expenses. The settlement agreement provides that Plaintiff's counsel will recover $9,733.35 and costs equaling $505.00. To date Plaintiff's counsel bore all costs of litigation and litigated a FLSA/NYLL case without compensation of any kind to date and their fee has been wholly contingent upon the result achieved.

Here the attorney fee which accounts for one third of the total settlement amount, is consistent with contingency fee agreements that are commonly approved in the Second Circuit in FLSA cases. *Najera v. Royal Bedding Company, LLC*, No. 13-cv-1767, 2015 WL 3540719 (E.D.N.Y. June 3, 2015); *Rangel v. Grand St. Meat & Produce Corp.*, No. 13-cv-3234 (E.D.N.Y. Sept. 19, 2013)

As a cross check of contingency fees, the Courts routinely look to the lodestar method. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F.Supp.3d 424 (S.D.N.Y. 2014).

The amount of attorney's fees to which a party is entitled is based on the presumptively reasonable fee, sometimes called the lodestar. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183, 189-90 (2d Cir. 2008). The presumptively reasonable fee is the product of the reasonable hours in the case and the reasonable hourly rate. *Millea v. Metro-N R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

> The reasonable hourly rate is determined by whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). However, the Court may adjust the hourly rate to account for other case-specific variables. *Arbor Hill*, 522 F.3d at 184, including the factors set forth in *Johnson v. Georgia Highway Express, Inc.*:
>
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved or the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability of the case;' (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989); *see also Arbor Hill*, 522 F.3d at 186 n.3 (citing the *Johnson* factors). But the Court need not make separate findings as to all twelve *Johnson* factors. *Lochren v. Cnty. of Suffolk*, 344 Fed. App'x 706, 709 (2d Cir. 2009).

Recent reasonable hourly rates awarded in similar cases range from $200 to $600 per hour for similar small firms. *See Rosendo v. Everbrighten Inc.*, No. 13 CV 7256, 2015 U.S. Dist. LEXIS 50323, at *23-24 (S.D.N.Y. Apr. 7, 2015) (finding rates for three attorneys from a small firm specializing in wage and hour litigation over five other cases to be from $200 to $425 and awarding between $225 and $400); *Guallpa v. NY Pro Signs Inc.*, No. 11 CV 3133, 2014 U.S. Dist. LEXIS 77033, at *28-30 (S.D.N.Y. May 27, 2014) (finding rates for three attorneys from one small firm over three other wage and hour cases to be from $350 to $600 and awarding within the same range in wage and hour case).

Here, Plaintiff seeks hourly rates of $400.00 for James F. Sullivan, an attorney and owner of the Law Offices of James F. Sullivan, P.C. ("JFS"). James F. Sullivan is a 1996 graduate of St. John's University School of Law. Mr. Sullivan is admitted to practice in New York (1997), New Jersey (1996), United State District Court, Southern District (2008) and Eastern District (2018) of New York. James Sullivan served as a Court Attorney in the Civil Court of the City of

3

New York, Queens County from 1997 to 2000. He then joined the in-house law firm for a major insurance company, before starting his own firm in 2002. Mr. Sullivan has tried numerous cases to verdict in jury trials in New York State Courts. Mr. Sullivan has also tried multiple bench trials and numerous arbitrations. Mr. Sullivan has a practice that is primarily focused on litigation of personal injury cases, FLSA actions and insurance claims.

Thus, the contingency amount of $9,733.35 (excluding costs) is more than the lodestar amount, $6,620.00. Contemporaneous time records of work performed in relation to the case are attached hereto as Exhibit "2"

The total of attorney's fees based on the presumptively reasonable rate is $6,620.00 and costs are $505.00, totaling $7,125.00. The proposed allocation of $10,238.35 to attorney's fees and costs represents a lodestar multiplier of 1.55. Although the lodestar multiplier is determinative only for a common fund settlement, Courts have considered it in individual settlements, and here it is in line with settlements approved in other cases. See, e.g., Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (awarding fee that represented 2.28 multiplier of modified lodestar calculation and noting that "multiplier near 2 compensates [plaintiffs' counsel] appropriately"). The Plaintiff and the Plaintiff's counsel have a contingent fee agreement compensating the Plaintiff's counsel one third of any settlement plus prepaid costs and expenses. Nothing additional is to be paid by the Plaintiff to the Plaintiff's counsel.

## THE SETTLEMENT SHOULD BE APPROVED

Court approval of an FLSA settlement is appropriate when the settlement reached as a result of contested litigation resolves bona fide disputes." Johnson v. Brennan, No. 10-cv-471, 2011 WL 4357376, at * 12 (S.D.N.Y. 2011). "If the proposed settlement reflects a reasonable compromise over contested issues "the court should approve the settlement." Id. (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1351 n. 8 (11th Cir. 1982). Plaintiff's recovery – after attorney's fees – is clearly fair and reasonable. See, e.g., Meigel v. Flowers of the World, NYC, Inc., No. 11, Civ. 465, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an accurate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."); Hernandez v. C-Penn Foods Inc., No. 11 Civ. 7410, 2011 U.S. Dist LEXIS 144978 at *2 (S.D.N.Y. 2011) ("[G]iven the disputed issues of fact relating to Plaintiff's wage claims and the fact that the settlement was reached pursuant to arm's length negotiations, the Court finds that the settlement agreed to in this action is fair and reasonable.").

The settlement agreement reached by the parties is fair. Although Plaintiff's recollection of his hours is sufficient to prove the hours that he worked and the wages he received, his recollection is not binding on the fact finder. See Gorman v. Consol. Edison Corp., 488 F.3d 586, 590 (2d Cir. 2007). Given Plaintiff's interest in the outcome of this matter, it is probable that the fact finder would apply some discount factor to his claimed hours. In addition, if Defendant' defenses are given credence, Plaintiff would recover significantly less, if any at all, than his claimed unpaid wages.

The non-monetary terms of the agreement are also reasonable. The agreement includes a limited release (paragraph 4) and there are no other provisions that undermine the purposes or

policy behind the FLSA. See, e.g., Santos v. Yellowstone Props., Inc., No. 15-cv-3986 (PAE), 2016 WL 2757427 at *1, 3 (S.D.N.Y. May 10, 2016); Hyun v. Ippudo USA Holdings, No. 14-cv-8706 (AJN), 2016 WL 1222347 at *3-4 (S.D.N.Y. Mar. 24, 2016). In light the overall fairness of the settlement and the risks of continued litigation, these provisions are fair and should be approved.

Given the conflicting evidence, the quality of the evidence and counsel, and the allocation of the burden of proof on Plaintiff, this settlement represents a reasonable compromise with respect to contested issues. For the foregoing reasons, we respectfully request that the Court approve the parties' settlement agreement as fair and reasonable and dismiss this action with prejudice. See Reyes v. Altamarea Group, LLC, 10-cv-6451 (RLE), 2011 WL 4599822 at *6 (S.D.N.Y. Aug. 16, 2011).

We thank the Court for its attention to this matter.

Respectfully,

James. F. Sullivan, Esq.
*Attorney for Plaintiff*

Felipe Orner
*Attorney for Defendant*

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made as of the 20th day of SEPTEMBER 2018, between and among **Santos Vicente Cuxulic** ("Plaintiff"), and **M&A Projects Inc** and **Bogdan Malinowski** ("Defendants");

**WHEREAS**, on May 3, 2018, Plaintiff filed a Complaint against Defendants in the United States District Court for the Southern District of New York, captioned *Cuxulic v. M&A Projects Inc and Bogdan Malinowski* Docket No. 18-cv-3621(ERK)(PK) (E.D.N.Y. filed May 3, 2018) (the "Action") in which Plaintiff asserted violations of the Fair Labor Standards Act of 1938, and the New York State Labor Law for the alleged underpayment of premium overtime wages, and for statutory damages under the New York Wage Theft Prevention Act.

**WHEREAS**, the Defendants filed a verified answer on August 27, 2018

**WHEREAS**, the Defendants deny the allegations raised in the Action in their entirety;

**WHEREAS**, Plaintiff and Defendants wish to avoid the uncertainties and expense of future proceedings in this matter and desire to forgo any and all future litigation and wish to settle this matter by agreeing as follows:

1. **Consideration to be provided to Plaintiff.**

Subject to the approval of this Agreement by the Court trying the Action in accordance with the paragraph 5 of this Agreement, in consideration for the promises made by Plaintiff set forth in the Agreement, Defendants agree to pay Plaintiff the total sum of Thirty Thousand Dollars and Zero Cents ($30,000.00): as follows.

    a.    One check payable to **Santos Vicente Cuxulic** in the gross amount of $19,761.65 representing allegedly unpaid wages, statutory damages, liquidated damages, and prejudgment interest from which no withholdings shall be taken. Said income will be reportable to Plaintiff via an IRS Form 1099 or 1099 (Misc.).

    b.    One check payable to the Law Offices of James F. Sullivan, P.C. in the gross amount of $10,238.35 representing reasonable attorney's fees and the costs and disbursements of this action expended on Plaintiff's behalf, from which no withholdings shall be taken. Said

1

income will be reportable to Plaintiff and the Law Offices of James F. Sullivan, P.C. via an IRS Form 1099 or 1099 (Misc.).

The payments set forth above shall be made no later than the 14th day after: (1) the Court approves of this Agreement; (2) enters the parties' executed Stipulation of Discontinuance with Prejudice as contemplated by paragraph 5 of this Agreement; or, a fully completed and executed IRS W9 form from the Law Offices of James F. Sullivan, P.C., whichever is later, by delivering same to the Felipe Orner, Esq. 72-29 137th Street Flusing, New York 11367. Should the Court disapprove of the Agreement and the parties do not remedy any issues identified by the Court barring approval of this Agreement, this Agreement will be void and of no effect and Defendant shall not be required to make the payments contemplated by this paragraph.

2. **Adequate consideration**

Plaintiff expressly agrees and acknowledges that the consideration referred to in Paragraph 1 of the Agreement constitutes adequate and ample consideration for the rights and claims he is waiving under the Agreement and for the obligations imposed upon him by virtue of the Agreement. This valuable consideration represents a complete settlement, satisfaction, release, discharge, and waiver of all claims arising under the Fair Labor Standards Act of 1938 and the New York State Labor Law for the nonpayment or underpayment of wages, benefits or other compensation and for violations of the New York Wage Theft Prevention Act including, but not limited to, those for alleged unpaid wages, lost wages, benefits or other compensation, liquidated damages, statutory penalties or interest, attorneys' fees, costs, and any other relief which Plaintiff may have in the Action or any other proceeding against Defendant. Plaintiff expressly agrees and acknowledges that Defendant has promised to pay the consideration referred to in Paragraph 1 of the Agreement in exchange for the releases, waivers, and promises made by Plaintiff in the Agreement.

3. **Release**

In consideration for the payments to be provided pursuant to Paragraph 1 above, Plaintiff, for himself and for his heirs, executors, administrators, trustees, legal representatives, successors and assigns (hereinafter referred to collectively as "Releasors"), except as provided in Paragraph 4, forever releases and discharges the Defendant, its parents, subsidiaries, affiliates, officers, directors, employees, heirs, executors, administrators, trustees, legal representatives, successors

and assigns, from any and all claims, demands, causes of action, fees and liabilities arising under the Fair Labor Standards Act of 1938 and the New York State Labor Law for the nonpayment or underpayment of wages, benefits or other compensation and for violations of the New York Wage Theft Prevention Act, whether known or unknown, from the beginning of the world up to and including the execution date of this Agreement. Those claims released include, but are not limited to claims for alleged unpaid wages, lost wages, benefits or other compensation, liquidated damages, statutory penalties or interest, attorneys' fees, costs, breach of contract (express or implied) with respect to the payment of wages, unjust enrichment with respect to the payment of wages, retaliation or wrongful discharge under the Fair Labor Standards Act of 1938 of the New York State Labor Law with respect to a complaint about wages, unpaid or underpaid rest or meal breaks, spread of hours compensation, uniform cleaning allowances, call-in pay, and recordkeeping. Plaintiff further acknowledges that he may later discover facts in addition to, or different from, those which he now knows or believes to be true with respect to the subject matter of the Agreement. Plaintiff agrees that any such difference in the facts shall not affect the Agreement, that the Plaintiff assumes the risk of any such difference in the facts, and that he further agrees that the Agreement shall remain in full force and effect and not be subject to rescission by reason of any such difference in the facts.

4. **Claims Not Released**

Notwithstanding the foregoing, Releasors are not waiving or releasing: (i) any claims arising after Plaintiff signs this Agreement; (ii) any claims which may arise in order to enforce this Agreement; and/or (iii) any claims or rights which cannot be waived by law.

5. **Filing of Stipulation of Discontinuance and Court Approval**

Upon the execution of this Agreement, counsel for both parties agree to execute a Stipulation of Discontinuance with Prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and to submit said stipulation and this Agreement to the Court trying the Action for its approval in accordance with applicable law. Should the Court not approve of the Agreement, the Agreement shall become null and void in all respects unless modified by the Court with the joint approval of the parties' counsel.

6.  **No Admission of Liability**

The parties hereby agree and acknowledge that nothing contained in the Agreement or otherwise shall constitute or be construed as an admission of any alleged liability or wrongdoing by Defendants. Defendants expressly deny that it engaged in any wrongdoing of any kind with respect to Plaintiff.

7.  **No Disputes Pending or Assigned**

Plaintiff represents that, aside from this Action, he does not currently have pending before any court or before any federal, state, or local governmental agency any dispute of any kind against Defendants relating to the claims released by this Agreement. Plaintiff further represents that he has not heretofore assigned or transferred, or purported to have assigned or transferred, to any entity or person any claim or dispute released by him herein.

8.  **Governing Law and Interpretation**

The Agreement shall be governed by and construed in accordance with the laws of the State of New York. Its language shall be construed as a whole, according to its fair meaning, and not strictly for or against either party, regardless as to which party may have drafted the language in question, as both parties had equal opportunity to draft and negotiate the language of the Agreement.

9.  **Severability**

Should any part of the Agreement be declared by a court of competent jurisdiction to be illegal or invalid, the remainder of the Agreement shall remain valid and in effect, with the invalid provision deemed to conform to a valid provision most closely approximating the intent of the invalid provision, or, if such conformity is not possible, then the invalid provision shall be deemed not to be a part of the Agreement.

10. **Disputes; Damages**

In the event of a dispute as to the interpretation, application, or violation of the Agreement, it is understood and agreed that such dispute shall be resolved before the Court trying the Action and, in that light, all parties waive any defenses to any such dispute based upon personal or subject matter jurisdiction, and agree that the Court shall retain continuing jurisdiction over this Action for the purposes of any such dispute. In any dispute concerning an

alleged breach of the Agreement, the prevailing party shall be entitled to an award of reasonable attorneys' fees and costs.

11. **Advice of Counsel**

Plaintiff and Defendants acknowledge that they have had an opportunity to receive advice about the terms and legal effects of the Agreement from counsel of their choosing. Plaintiff and Defendants hereby represent that each has consulted their attorney(s) about the Agreement before signing it. The parties further acknowledge that they have read this Agreement in its entirety, that they have had an opportunity to discuss it with counsel, that they understand its terms, that they are fully competent to enter into it, that they have had a reasonable time within which to consider this Agreement and its terms before signing it.

12. **Voluntary Agreement**

The parties agree that they are signing this Agreement of their own free will, without coercion or duress, and voluntarily assent to all the terms and conditions contained herein.

13. **Entire Agreement**

The parties agree that this Agreement represents the complete understanding between the parties and no other promises or agreements shall be binding unless in writing and signed by the parties. This is an all-inclusive Agreement and the parties agree that there are no other written, oral, and/or implied representations, promises, or agreements that exist between them.

14. **Modifications and Amendments**

The Agreement cannot be modified, amended, terminated, or otherwise changed unless it is done so pursuant to a written document signed by Plaintiff and Defendants.

15. **Counterparts / Electronic Transmissions**

This Agreement may be executed in counterparts, each of which shall be deemed an original and each of which shall together constitute one and the same agreement. The parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiff and Defendants have signed the same instrument. Any Party may execute this Agreement by physically signing on the designated signature block below and transmitting that signature page *via* facsimile and/or email to counsel for the other Party. Any signature made and transmitted by facsimile and/or email for the purpose of executing this

Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

16. **Section Headings**

Section headings are used herein for reference only, and do not affect the meaning of any provision of this Agreement.

17. **Confidentiality**

Plaintiff and Defendants agree that the terms of this Confidential Settlement Agreement are strictly confidential and shall not be disclosed to anyone other than their respective attorneys, accountants or tax advisors or as required by law. Additionally, Plaintiff expressly agrees to keep it strictly confidential and not discuss, disclose, or reveal, directly, or indirectly, to any person, business, media, or entity of any type whatsoever, any and all the following: (a) the fact or existence of this Confidential Settlement Agreement; and (b) any aspect of any of the operations and activities of Defendants as alleged by Plaintiff in the Action, its staffed personnel and individuals for whom it is responsible or who otherwise in its charge.

18. **Taxes**

Plaintiff understands and agrees that Defendants are not withholding federal or state income taxes, FICA, Social Security, Medicare, or any other withholding from the settlement payment and therefore agrees and promises to pay all taxes which may be due with respect to the Settlement Payment in the event a governmental taxing authority determines that any such taxes are due. Plaintiff further agrees to indemnify and hold Defendants harmless from all liabilities from failing to withhold the foregoing tax items from the Settlement Payments to them.

19. **Costs**

No costs shall be paid by any party as against any other as incurred through the date of the stipulation agreement execution.

20. **Duty to Execute**

Parties agree to execute in the future any such additional documents corroborating and validating the settlement of said claims as may be required by law, by governmental agency or by court proceedings.

WHEREFORE, the parties hereto have voluntarily caused this Agreement to be signed as of the day and dates indicated below.

Santos Vicente Cuxulic
Signature: *[signature]*
Date: 9/19/2018

M&A Projects Inc
Name and Title: BOGDAN MALINOWSKI   PRESIDENT
Signature: *[signature]*
Date: 09 20 2018

Bogdan Malinowski
Signature: *[signature]*
Date: 09 20 2018

7

# EXHIBIT 2

# Law Offices of James F. Sullivan, P.C.
52 Duane Street, 7th Floor
New York, New York 10007
212-374-0009
(fax)212-374-9931

Santos Vincente Cuxulic
138 Highland Place
Brooklyn, New York 11208

September 28, 2018
18-1

Matter No. 18-1
Vicente Santos Cuxulic v. M & A Projects Inc. and Bogdan Mal
Bill No. 56

| **Fees:** | | | | Hours | |
|---|---|---|---|---|---|
| 04/17/18 | JFS | Meeting with client to review possible claim for unpaid overtime against M&A Projects and Bogdan Malinowski with Spanish interpreter. | | 2.00 | 800.00 |
| 04/23/18 | JFS | Draft of Summons and Complaint | | 3.00 | 1,200.00 |
| 05/03/18 | JFS | Filing of Summons and Complaint with Court. | | 1.25 | 500.00 |
| 05/03/18 | JFS | Prepare Summons and Complaint for service by process servers. | | 0.60 | 240.00 |
| 08/08/18 | JFS | Review of file and preparation of spread sheet evidencing client's damages. Review of stipulation to extend defendants' time to answer complaint. | | 1.50 | 600.00 |
| 08/13/18 | JFS | Letter to court responding to order to show cause. | | 0.35 | 140.00 |
| 08/17/18 | JFS | Service of Court docket extending defendants' time to answer until August 27, 2018 by regular mail and email. | | 0.50 | 200.00 |
| 08/21/18 | JFS | Phone call with defendant's attorney regarding his offer and his clients' position on hours worked and rate of pay. Meeting with client to explain offer; defendants' position on settlement and authority for counter to defendants' offer. meeting with Spanish interpreter. | | 1.25 | 500.00 |

Matter No. 18-1  
Vicente Santos Cuxulic v. M & A Projects Inc. and Bogdan Mal

September 28, 2018  
Page 2

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| 08/21/18 | JFS | Receipt and review of email from defendants' attorney with offer to settle case. Compare defendants hours and wage rates with clients. Phone call with defendant's attorney regarding his offer and his clients' position on hours worked and rate of pay. Preparation of spread sheet using defendants claimed numbers to review with client. Meeting with client to explain offer; defendants' position on settlement and authority for counter to defendants' offer. Meeting with Spanish interpreter. | 2.75 | 1,100.00 |
| 08/22/18 | JFS | Phone call with defendant's attorney with counter to his offer of settlement. Phone call with client regarding defendants new offer. | 0.85 | 340.00 |
| 08/23/18 | JFS | Draft of Settlement agreement. Begin drafting joint letter to court. | 1.50 | 600.00 |
| 09/10/18 | JFS | Revise settlement agreement, adding provisions requested by defendant. | 0.75 | 300.00 |
| 09/14/18 | JFS | Revise settlement agreement incorporating defendants' request for changes to agreement. | 0.25 | 100.00 |
| | | Hours: | 16.55 | |
| | | Total fees: | | $6,620.00 |

**Expenses:**

| Date | Atty | Description | Amount |
|---|---|---|---|
| 05/02/18 | JFS | Service on M&A Projects Inc. with Secretary of State of New York. | 55.00 |
| 05/03/18 | JFS | Purchase of case number | 400.00 |
| 06/28/18 | JFS | Service of summons and complaint on Bogdan Malinowski | 50.00 |
| | | Total expenses: | $505.00 |

Matter No. 18-1  
Vicente Santos Cuxulic v. M & A Projects Inc. and Bogdan Mal

September 28, 2018  
Page 3

**Billing Summary**

| | |
|---|---:|
| Previous balance | $0.00 |
| Payments & adjustments | 0.00 |
| Current fees & expenses | 7,125.00 |
| **Total now due** | **$7,125.00** |